## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL CARNEVALE,  )
)
Plaintiff  )
)
v.  )     Civil Action No. 2:22-cv-341
)     Magistrate Judge Patricia L. Dodge
JENNIFER DIGIOVANNI, et al.,  )
)
Defendants.  )

## MEMORANDUM OPINION[1]

Pending before the Court is Defendant United States of America's Motion to Dismiss (ECF No. 52) Count IV of the Amended Complaint (ECF No. 44) of Plaintiff Daniel Carnevale ("Carnevale"). For the reasons that follow, its motion will be granted.

### I.    Relevant Procedural History

Carnevale commenced this action in February 2022.  His claims arise from a 1993 apartment fire that resulted in the death of three residents and serious injuries to another resident. (*Id.*)  Carnevale was arrested and convicted of one count of arson and endangering persons, three counts of murder in the second degree, one count of burglary in the first degree, and one count of aggravated assault.  (*Id.* ¶ 100.) Carnevale alleges that he did not commit the crimes for which he was convicted and that he was ultimately exonerated on March 17, 2020 after spending 13 years in prison.  (*Id.* ¶ 102.)

The original Complaint asserted claims raised under 42 U.S.C. §1983, including include a Fourth Amendment malicious prosecution claim against Scott Evans ("Evans"), and J.R. Smith

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

("Smith"), detectives who work for the City of Pittsburgh's Bureau of Police ("PBP"); a Fourteenth Amendment fabrication of evidence claim against Deputy Allegheny County District Attorney Jennifer DiGiovanni ("DiGiovanni"), Evans and Smith; and a civil conspiracy claim against DiGiovanni, Evans and Smith.

Evans and Smith filed an Answer to the Complaint (ECF No. 22). Defendant DiGiovanni filed a motion to dismiss (ECF 10) that was granted in part and denied in part. Specifically, the Court dismissed Carnevale's claim against Defendant DiGiovanni in Count I, as well as those portions of the claims against Defendant DiGiovanni in Count II and Count III that are based on (1) DiGiovanni's alleged promise of lenience for a witness in exchange for his testimony and the failure to disclose such information to Carnevale; and (2) DiGiovanni's alleged role of directing Burns to fabricate testimony at trial and eliciting his false testimony at trial. DiGiovanni's motion was otherwise denied.

On November 29, 2022, the parties stipulated that Carnevale could file an Amended Complaint naming the United States of America as a defendant and amend the caption accordingly (ECF No. 42.) The next day, Carnevale filed an Amended Complaint, which is the operative pleading.  The first three counts of the Amended Complaint are identical to the counts asserted in the original Complaint.  The Amended Complaint adds the United States as a defendant and includes one claim in Count IV only against the United States for malicious prosecution under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et seq.*  (ECF No. 44.)

Defendants Evans, Smith and DiGiovanni filed Answers to the Amended Complaint. (ECF Nos. 46 and 47.)  On March 30, 2023, the United States filed a Motion to Dismiss (ECF No. 52) which has been fully briefed.  (ECF Nos. 53, 61, 65, 66).

## II.   Relevant Factual Allegations

According to the Amended Complaint, on January 17, 1993, a fire occurred at two adjoining apartments in Pittsburgh resulting in the deaths of three residents and serious injuries to another person.  (ECF No. 44 ¶¶ 12, 22.) Carnevale alleges that the fire was accidental. (*Id.* ¶ 23.)

The Bureau of Alcohol, Tobacco and Firearms ("ATF") was the lead United States investigative agency regarding the fire and that William Petraitis ("Petraitis"), a Special Agent for the ATF, was the lead fire investigator.  (*Id.* ¶¶ 26, 27.)   According to Carnevale, Petraitis' fire investigation and his ultimate determination that the fire was intentionally set was wrong because, among other reasons, the witness statements taken at the scene "established that the fire…was accidental and not intentionally set."; Petraitis "did not perform the appropriate investigation" to support his position that the fire was intentionally set; and Petraitis "never took any legitimate steps to rule out an accidental cause of the fire."  Further, based on Carnevale's analysis of the evidence, "[t]here has never been any valid and/or reliable chemical analysis to prove that lacquer thinner was used as an accelerant to start the fire…or that the fire originated anywhere but from the malfunctioning of the building's heating system, which caused …pipes in the building to overheat." (*Id.* ¶¶ 23,28, 30-32, 39.)

Carnevale also alleges that Petraitis intentionally falsified evidence by stating that he had ruled out an accidental fire despite knowing that there was no evidence to support this

3

conclusion, and that he made false representations to other investigators, including that the fire was intentionally set and that an accelerant was used to start it.  (ECF No. 44 ¶¶ 29, 31-35.) Carnevale also finds fault with other ATF decisions, including whether to evacuate the scene, when to collect evidence, what evidence to collect and the reliability of that evidence.  (*Id*. ¶¶44-47.)

Carnevale also takes issue with the laboratory report prepared by chemists at the ATF laboratory.  He claims that Petraitis told William Kinard ("Kinard"), a chemist for ATF, "to falsify his reporting to state that lacquer thinner was present in the mechanical room of the basement" of the building where the fire took place "when it was not" and that in response, "Kinard intentionally (and falsely) determined in his chemical report that compounds of lacquer thinner were present in the area where Petraitis said they would be." (ECF No. 44 ¶¶ 34, 35.)  He also alleges that before his criminal trial, Julia A. Dolan, the Forensic Laboratory Chief of the ATF, "identified falsifications within every one of Kinard's findings in connection with the presence of lacquer thinner" and that Dolan's Supervisor, Richard Strobel "agreed" with Dolan. (*Id*. ¶¶ 36, 37.)  Finally, Carnevale claims, these findings were either turned over to prosecutors who withheld the information or were never provided to the prosecution by ATF.  (*Id*. ¶38.)[2]

---

[2] The allegations of purported misconduct of the ATF agents made in the Amended Complaint (ECF No. 44 ¶¶26-52) are the same as those contained in the original Complaint but which did not name the United States as a defendant (ECF No. 1 ¶¶23-50).  None of the paragraphs of either the original Complaint or the Amended Complaint specifically identify a constitutional violation against either the ATF agents or the United States based on the purported misconduct.

### III.     Standard of Review

#### A.   <u>Rule 12(b)(1)</u>

The United States has moved to dismiss Carnevale's FTCA claim under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  It first argues that this court lacks subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1) because the discretionary function exception to the FTCA applies to the claims made against the ATF fire investigators and Carnevale's allegations about the ATF chemists fail based upon the "law enforcement proviso" of the FTCA.  (ECF No. 53 pp. 6-17.)

 "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or factual attack."  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  A facial challenge is made without "disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  *Id.* citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 304 n. 3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Laon Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A factual challenge attacks the "factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'"  *Id.* citing *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

In part, the United States makes a factual challenge to the court's subject matter jurisdiction over Carnevale's claims.  In support of its 12(b)(1) motion, it has attached the Declaration of ATF Deputy Assistant Director Gregory Czarnopy (the "Cznaropy Declaration").  This Declaration discusses the job classifications and duties of chemists who work for ATF in support of its argument that ATF chemists fall outside the definition of "investigative and law enforcement officers" under the FTCA.  (ECF 53-1.)  Thus, the court may "weigh and consider

evidence outside the pleadings." *Constitution Party of Pa.*, 757 F.3d at 358.  When Rule 12(b)(1) factual challenge is made, "the plaintiff will have the burden of proof that jurisdiction does in fact exist' and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Mortensen*, 549 F.2d at 891.  "No presumptive truthfulness attaches to [the] plaintiff's allegations."  *Id.*

As it relates to the conduct of Petraitis, however, the United States has not submitted any additional facts for consideration.  Therefore, the Court must consider any well-pleaded facts in the Amended Complaint as true for the purpose of resolving the Rule 12(b)(1) motion.

**B.  <u>Rule 12(b)(6)</u>**

The United States alternatively contends that Fed. R. Civ. Pro. 12(b)(6) bars Carnevale's FTCA claim because he has not plausibly alleged that ATF initiated his prosecution.  Further, it asserts, a claim based on Petraitis' purportedly false testimony at trial "is precluded under well-established law."  (*Id*. p. 18.)

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

6

*See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.  If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, attached exhibits and matters of public record.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## IV.  Discussion

### A.  Motion to Dismiss Under Rule 12(b)(1)

#### 1.  Carnevale's Claim Regarding the ATF Fire Investigation

The United States contends that the discretionary function exception to the FTCA bars Carnevale's FTCA claim regarding the ATF fire investigation. (ECF 53 p. 6.)

The FTCA waives the federal government's sovereign immunity for the negligent actions of its employees.  *See Berkovitz v. United States* 468 U.S. 531, 535 (1988); 28 U.S.C. §§2671-2680.  That waiver, however, is subject to certain exceptions, including the discretionary function exception.  This exception effectively retains the Government's immunity for '[a]ny claim…based upon the exercise or performance or the failure to exercise or perform a

discretionary function or duty…whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  Consequently, a claim for conduct that falls within this exception must be dismissed for lack of subject matter jurisdiction.  *Berkovitz*, 486 U.S. at 533.

The Supreme Court has set forth a two-part test for determining whether the discretionary function exception applies.  First, a court must consider the nature of the conduct and decide whether it "involve[es] an element of judgment or choice."  *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citation omitted).  When it does not involve judgment or choice, such as where "a federal statute, regulation or policy specifically prescribes a course of action for the employee to follow," the inquiry is at an end and the exception is inapplicable because in such a situation, "the employee has no rightful option but to adhere to the directive."  *Id.*  However, where the employee does have a choice, the court considers "whether that judgment is of the kind that the…exception was designed to shield."  *Id.* at 322-323.  At this point, a court must determine whether the conduct is objectively "susceptible to policy analysis."  *Id.* at 325.  "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment."  *Berkovitz*, 486 U.S. at 537.  That said, "conduct cannot be discretionary if it violates the Constitution" because '[f]ederal officials do not possess discretion to violate constitutional rights.'"  *U.S. Fed. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988) (internal citations omitted); *see also X*i *v. Haugen, et al.*, 68 F.4th 824, 839 (3d Cir. 2023).

Here, the United States argues that Carnevale's FTCA claim regarding the fire investigation is barred by the discretionary function exception because he is challenging the "adequacy of the ATF's investigation."  (ECF No. 53 p. 7.)  Carnevale counters that the

discretionary function exception does not apply here because the ATF agents committed "constitutional violations." In support of his contention, Carnevale relies upon decisions from this and other Circuits that hold that the discretionary function exception does not apply when the "plaintiff plausibly argues, among other things, unconstitutional conduct." *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116,120 (3d Cir. 1998) (ECF 61 p. 8.)

Carnevale is correct that when a constitutional violation has been alleged, the discretionary function exception does not apply. While he alleges specific constitutional violations against defendants DiGiovanni, Evans and Smith in the Amended Complaint (*see* ECF No. 44 Counts I and II headings; and text of ¶¶ 103-107), he makes no specific reference to a constitutional violation on the part of the United States or its employees.  (*See id.* Count VI heading; and text of ¶¶111-112.) Although Carnevale asserts in his brief that his claims against ATF employees relate to constitutional violations, it is well-settled that a party may not rely upon factual allegations in a brief that are not in the operative complaint.  *Dongelewicz v. PNC Bank Nat'l Ass'n.,* 104 F. App'x 811, 819 n.4 (3d Cir. 2004) (Noting that "'a contention in a brief 'clearly ... may not' be used to 'substitute for an allegation in a complaint'")(quoting *Williams v. New Castle Cnty.,* 970 F.2d 1260, 1266 n.4 (3d Cir. 1992) ); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal citation omitted)).

Construing the allegations of misconduct made against the ATF agents liberally, however, as the Court is required to do, Carnevale has arguably alleged constitutional violations. Specifically, the Amended Complaint accuses Petraitis of falsely claiming that lacquer thinner "was used as an accelerant to start the fire" in order to "support his claim that the fire was

intentionally set" and then telling Kinard, an ATF chemist, "to falsify his reporting to state that lacquer thinner was present" in the area where the fire started "when it was not." (ECF 44 ¶¶33-34.)  (*Id.*) Read liberally, these allegations accuse Petraitis of falsely and intentionally fabricating evidence in the context of a potential criminal investigation. These allegations, if true, plausibly assert a Fourth Amendment violation.  *See Xi v. Haugen, et al.,* 68 f.4[th] 824 (3d Cir. 2023) (a plaintiff who makes an accusation of fabrication of evidence plausibly asserts a Fourth Amendment violation).

As the United States points out, many of the allegations of the Amended Complaint clearly relate conduct by Petraitis that represents the permissible exercise of judgment. By way of example, Petraitis is alleged to have made judgments about the witness statements in ruling out an accidental fire.  Further, he "never took any legitimate steps" to rule out an accidental cause of the fire.  He is also alleged to have failed to perform an "appropriate investigation."  In other words, while Carnevale questions Petraitis' judgment, the adequacy of his investigation and his conclusions, these allegations fall squarely within the discretionary function exception.

On the other hand, the allegations of intentional falsification of evidence and falsely reporting that an accelerant existed in a specific location when it did not, and instructing a chemist to perpetuate this falsehood, taken as true, fall outside the protections afforded by the discretionary function exception.

Therefore, as it relates to the ATF investigation, the United States' motion to dismiss under Fed. R. Civ. Pro. 12 (b)(1) will be denied.

2.   <u>Carnevale's Claims Regarding the Conduct of ATF Chemists</u>

As it relates to the ATF chemists, the United States claims that their conduct falls outside the "law enforcement proviso" of the FTCA codified at 28 U.S.C. § 2680(h).  (ECF No. 53 pp. 12-18.)  The "law enforcement proviso" is a limited waiver of sovereign immunity for claims arising out of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" by an "investigative or law enforcement officer."  28 U.S.C. § 2680(h).  The FTCA defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  *Id.*  To determine whether the proviso applies, a court must consider the status of persons whose conduct may be actionable, not the types of activities in which they were engaged that gave rise to the tort claim.  *Millbrook,* 569 U.S. at 56 (2013).  "Under the proviso, an intentional tort is not actionable unless it occurs while the law enforcement officer is "acting within the scope of his office or employment."  *Id.*  The Supreme Court has also explained that "[t]he plain text confirms that Congress intended immunity determinations to depend on a federal officer's legal authority, not on a particular exercise of that authority."  *Id.*

The United States argues that it is immune from liability for the alleged conduct of the ATF chemists because they are not "investigative or law enforcement officers."  (ECF No. 53 p. 13.)  In support, they cite the Cznaropy Declaration, which states that the ATF does not classify chemists under the GS-Grade for law enforcement and special agents; rather, they are classified under the code used for scientists and engineers.  Cznaropy Declaration at ¶6.  In addition, according to the position description of an ATF chemist that is set forth in Exhibit A of the Cznaropy Declaration, chemists with the ATF serve "as the technical authority in the analysis of

forensic evidence gathered from criminal investigations[,]…are not authorized to serve or execute warrants, serve subpoenas, make arrests, or carry a firearm, which are duties separately designated by Congress and ATF to Special Agents…and do not receive law enforcement training at the Federal Law Enforcement Training Center."  (ECF No. 53 p. 14.)  Thus, the United States contends, because ATF chemists are not investigative or law enforcement officers as defined by the FTCA, it is immune from liability for their conduct.  (*Id.* p. 18.)

In response, Carnevale argues because ATF chemists have the power to advise and assist special agents at crime scenes where special expertise might assist the investigation, they are "investigative or law enforcement officers" under the FTCA and as a result, the United States is not immune for their improper conduct.  (ECF No 61 pp. 16-20.)  In support, Carnevale cites and quotes extensively from *Bunch v. United States*, 880 F.3d 938 (7th Cir. 2018).  In *Bunch*, relying on the same regulations cited by Carnevale regarding chemists' authority to enter a crime scene, the Seventh Circuit Court of Appeals found there was a question of material fact as to whether a forensic chemist with the ATF who was at the crime scene with an ATF agent was an "investigative or law enforcement officer" within the meaning of the FTCA and remanded to the lower court to develop a factual record on the issue.  *Id*. at 943.  Notably, the Seventh Circuit did not hold that the ATF chemists involved in that case were "investigative or law enforcement officers" under the FTCA – the court simply held that such decision would be resolved at trial. *Id.*

While the United States concedes in its Reply that "chemists have legal authority to 'advise' and 'assist' an agent on a crime scene…[and] that the only disagreement between the parties is a legal one – that is whether the legal authority to assist an agent on a crime scene is the

equivalent to 'executing a search'" under the FTCA  (ECF No. 65 p. 5), it notes that the *Bunch* case is not controlling authority in the Third Circuit.  Further, there is no binding authority in this Circuit holding that ATF chemists are "investigative or law enforcement officers" under the FTCA and that "categorizing them as such is contrary to the plain language and history" of the FTCA.  *Id.* p. 6.

Because this is a factual challenge to this court's subject matter jurisdiction filed pursuant to Fed R. Civ. Pro. 12(b)(1), the Court may consider the Czarnopy Declaration and its attached exhibit in evaluating this matter. *See Constitution Party of Pa.,* 757 F.3d at 358. In addition, it has also considered the allegations of the Amended Complaint.  These allegations confirm that Kinard, the ATF chemist, performed no independent investigative or law enforcement activities, nor is he alleged to have assisted Petraitis in the investigation. Rather, his report included allegedly false information supplied by Petraitis.  The only other allegations about the conduct of ATF employees state that they identified falsifications in Kinard's report years later "in preparation for Mr. Carnevale's criminal trial" and either turned over these findings to prosecutors and intentionally failed to do so.  Even if assumed to be true, this conduct does not represent investigative or law enforcement activity.

Having considered all evidence in the record, the Court finds that there is no basis to conclude that the ATF chemists identified in the Amended Complaint were acting as "investigative or law enforcement officers" as defined by the FTCA. Consequently, this court lacks subject matter jurisdiction over the FTCA claim against the United States to the extent that it is based on their alleged conduct and will grant its motion to dismiss with respect to such claim.

### B.  **Motion to Dismiss Under Rule 12(b)(6)**

As it relates to its Rule 12(b)(6) motion, the United States contends that to the extent Carnevale's FTCA claim is based on Petraitis' purported false testimony at trial, his claim is precluded under "well-established law."  (ECF No. 53 p. 18.)  As pointed out in the United States' Reply Brief, Carnevale's Brief in Opposition to its motion includes no discussion of this argument.  Thus, it appears that Carnevale does not contest the United States' position that he cannot rely upon allegedly false testimony by Petraitis to support his FTCA claim. At any rate, as asserted by the United States, federal law enforcement agents have absolute immunity from liability based upon their testimony.  *See Hughes v. Long*, 242 F.3d 121 125 (3d Cir. 2001) ("Witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony.") (citing *Briscoe v. LaHue*, 460 U.S. 325, 341, 345-346 (1983)). Thus, a claim based upon false testimony by Petraitis fails as a matter of law.

The United States also argues that Carnevale fails to state a claim of malicious prosecution under the FTCA because he has not plausibly alleged that the ATF initiated his prosecution.  In Count IV, Carnevale alleges that the United States, through its employees, "negligently initiated the prosecution" of Carnevale. (ECF No. 44 ¶112.) Carnevale alternatively claims that employees of the United States maliciously prosecuted Carnevale by fabricating evidence and using it against him to bring about his prosecution and/or help secure his conviction. (*Id.* ¶ 113.)

Because the alleged conduct that gave rise to the claim occurred in Pennsylvania, Pennsylvania law applies.  28 U.S.C. § 1346(b)(1).  Under Pennsylvania law, "a claim for malicious prosecution consists of these five elements:(1) the defendant initiated a criminal

proceeding;(2) without probable cause; (3) maliciously or for a purpose other than bringing the plaintiff to justice; (4) causing the plaintiff to suffer a deprivation of liberty consistent with the concept of seizure; and (5) the outcome of the criminal proceeding favored the plaintiff." *Karkalas v. Marks,* 845 Fed. Appx. 114, 119 (3d Cir. 2021) (citing *Harvard v. Cesnalis,* 973 F.3d 190, 203 (3d Cir. 2020)). Malicious prosecution under § 1983 requires the same elements. *Kossler v. Crisanti,*564 F.3d 181,186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003).

According to the Amended Complaint, the fire and subsequent ATF investigation took place in 1993. No criminal charges are alleged to have been brought against Carnevale at that time. In fact, it is not alleged that the ATF even identified Carnevale as a suspect. Twelve years later, this "cold case" was reopened by William Mullen, the former Sheriff of Allegheny County. (ECF No. 44 ¶53.) Carnevale does not allege that the ATF was involved in any way with Mullen's decision to re-open the case.

As alleged in the Amended Complaint, Defendants Evans and Smith were the primary investigators when the case was re-opened, but they chose not to reinvestigate the cause of the fire. They did, however, conduct an independent investigation. As alleged in the Amended Complaint, Evans and Smith were provided with a plethora of information that called into question any responsibility on the part of Carnevale, but allegedly chose to ignore or conceal it. Moreover, as alleged in the Amended Complaint, it was Evans and Smith who prepared the affidavit of probable cause that led to his arrest. While they allegedly included certain findings made by the ATF years before, it was Evans and Smith, not the ATF, who prepared the affidavit and made the determination of what to include, or not include, therein. As stated in the

Amended Complaint, Evans and Smith used other "false information" in their affidavit and knowingly omitted other material information. And as Carnevale admits in the Amended Complaint, Evans and Smith subsequently arrested Carnevale "*based solely on the information provided by Sandi and Shane Evans*" to them. Neither of these witnesses are alleged to have given evidence to Petraitis years before. (ECF No. 44¶ 80.) (emphasis added)

Thus, based on Carnevale's pleading, it cannot reasonably be concluded that the initiation of his prosecution was by any employee of the United States.   As no United States employee was involved in this process, there is no basis to conclude, nor has Carnevale pleaded, that the United States "initiated" a criminal proceeding against Carnevale or did so without probable cause.   Thus, neither of these requisite elements of a malicious prosecution claim are plausibly pleaded.

Further, the Amended Complaint does not allege that any ATF employee engaged in malicious conduct towards Carnevale for a reason other than bringing him to justice.   While Carnevale alleges that the ATF investigation was deficient and included false conclusions, he does not allege that any of this conduct was done maliciously or that it was specifically directed to Carnevale. Indeed, there is no allegation in the Amended Complaint that when the investigation ended in 1993, anyone from the ATF had implicated Carnevale or intended to do so with malicious intent.

As it relates to the prosecution of Carnevale years later, the sole involvement of the ATF is that its employees *may* have intentionally failed to provide information about false statements to investigators and prosecutors and "allowed the criminal trial to proceed in the face of them."

(ECF No. 44 ¶ 38.)[3] But this allegation falls far short of conduct that meets all of the necessary elements of a malicious prosecution claim. Moreover, even if the ATF failed to provide this information, the independent investigation by Evans and Smith, the determination that probable cause existed and the decision to proceed with the prosecution is not alleged to have been based on the chemist's report. Simply put, more than twelve years after the ATF's involvement had ceased, the Commonwealth of Pennsylvania decided to prosecute Carnevale based upon the investigation of Evans and Smith, and according to the Amended Complaint, the subsequent determination of probable cause, whether justified or not, was based on a number of factors.

Citing *Hess v. County of Lancaster*, 514 A.2d 681 (Pa. Cmwlth. 1986) and *Demby v. Drexel Univ.*, 2016 WL 5515853 (Pa. Super. Aug. 16, 2016), Carnevale argues that "whether a defendant *instituted* proceedings may appropriately be based on the provision of false information to another." (ECF No. 61 p. 14.) (emphasis in original). He contends that "because other investigators and prosecutors relied on the knowingly false information provided to them by the ATF that the fire…was intentionally set, they set in motion a criminal process" which resulted in the charges being filed against him. (*Id.* p. 16.) Notably, however, the Amended Complaint makes no such allegation; indeed, the cold-case investigation that led to Carnevale's arrest and prosecution is alleged to have been flawed in a number of respects, as recounted at length. Moreover, it is not plausible to suggest that an investigation in 1993 "set in motion" a cold case that was reopened years later. And notably, Carnevale has specifically alleged that his arrest was based *solely* on information received from Sandi and Shane Evans.

---

[3] Carnevale alternatively asserts that the ATF did turn over information about the alleged falsity of Kinard's findings about the presence of lacquer thinner "to investigators and prosecutors before Mr. Carnevale's criminal trial and those investigators unlawfully withheld it." (ECF No. 44 ¶ 38.)

In addition, neither *Hess* nor *Demby* apply here. *Hess* involved a private individual who was accused of providing false testimony at a state court proceeding which resulted in Hess being prosecuted for perjury, which charge was later dropped.[4]  Carnevale's reliance on *Demby* likewise is similarly misplaced.  In *Demby*, the plaintiff claimed to have been falsely arrested and charged with various crimes, which charges were later dropped because false paperwork had been provided to the Philadelphia District Attorney's Office by Drexel University employees and officers.  After preliminary objections to his malicious prosecution claim (and other claims) were sustained by the Philadelphia County Common Pleas Court, the plaintiff appealed to the Pennsylvania Superior Court. In a "non-precedential" decision, the Superior Court reversed the dismissal of the malicious prosecution claim, finding that "as pleaded in the complaint, [the Drexel employees and officers] knew the allegations were false and that the Philadelphia municipal police authorities were relying on these false allegations to charge [Demby]."

 Here, the Amended Complaint explicitly pleads that Evans and Smith did not rely upon the ATF findings in order to arrest and charge Carnevale, nor does it allege that anyone at the ATF knew of any such reliance.

Thus, because the Amended Complaint does not plausibly allege facts that could support the elements of a malicious prosecution claim, Carnevale has failed to state a claim upon which relief may be granted against the United States.  Allowing another amendment of the Amended

---

[4] Moreover, the Pennsylvania Commonwealth Court determined in *Hess* that to charge a private person with responsibility for the initiation of proceedings by a public office, the person alleging malicious prosecution must show that the private person had a desire to have the proceedings initiated, expressed by direction or pressure of any kind and that such pressure was the determining factor in the public official's decision to commence the prosecution.  *Hess*, 514 A.2d at 322.  No such facts are pleaded  here.

Complaint would be futile in light of the nature of the allegations of the Amended Complaint regarding the initiation of proceedings against Carnevale and his prosecution.

**V.     Conclusion**

For these reasons, the United States' Motion to Dismiss will be granted. An appropriate Order follows.

Dated: August 17, 2023                     BY THE COURT:

                                           /s/ Patricia L. Dodge
                                           PATRICIA L. DODGE
                                           UNITED STATES MAGISTRATE JUDGE