IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL CARNEVALE, | ) |
| | ) |
| Plaintiff, | )  2:22-cv-341 |
| | ) |
| vs. | ) |
| | ) |
| JENNIFER DIGIOVANNI, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court with respect to Plaintiff Daniel Carnevale's ("Carnevale") Motion for Reconsideration (ECF No. 73) of the Court's August 17, 2023 Memorandum Opinion and Order (ECF Nos. 71 and 72) that granted Defendant United States of America's Motion to Dismiss Count IV of the Amended Complaint (ECF No. 52).

For the reasons that follow, Carnevale's Motion for Reconsideration will be denied.

**I.  Relevant Procedural History**

Carnevale commenced this action in February 2022.  His claims arise from his arrest and conviction for one count of arson and endangering persons, three counts of murder in the second degree, one count of burglary in the first degree, and one count of aggravated assault in connection with a 1993 apartment fire. (ECF No. 44 ¶ 100.)  Carnevale alleges that he did not commit the crimes for which he was convicted and that he was ultimately exonerated in 2020 after spending 13 years in prison.  (*Id.* ¶ 102.)

The original Complaint asserted claims under 42 U.S.C. §1983, including a Fourth Amendment malicious prosecution claim against Scott Evans ("Evans"), and J.R. Smith ("Smith"), detectives who work for the City of Pittsburgh's Bureau of Police ("PBP"); a Fourteenth Amendment fabrication of evidence claim against Deputy Allegheny County District Attorney

Jennifer DiGiovanni ("DiGiovanni"), Evans and Smith; and a civil conspiracy claim against DiGiovanni, Evans and Smith.

Evans and Smith filed an Answer to the Complaint (ECF No. 22). Defendant DiGiovanni filed a motion to dismiss (ECF No. 10) that was granted in part and denied in part.

On November 30, 2022, after the parties stipulated that Carnevale could amend his Complaint in order to add the United States of America as a defendant, Carnevale filed an Amended Complaint. (ECF No. 44.) The first three counts of the Amended Complaint are virtually identical to the counts asserted in the original Complaint. It adds a fourth count for malicious prosecution under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et seq.* against the United States only.

The United States subsequently moved to dismiss Count IV of the Amended Complaint on March 23, 2023 (ECF No. 52.) In a Memorandum Opinion dated August 17, 2023, the Court granted the United States' motion. Carnevale's motion for reconsideration followed.

**II.     Bases for Granting the United States' Motion to Dismiss**

The United States moved to dismiss Count IV of the Amended Complaint under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. Pro. It first argued that under Rule 12(b)(1), this court lacked subject matter jurisdiction because the discretionary function exception to the FTCA applies to the claims made against the ATF fire investigators and Carnevale's allegations about the ATF chemists failed based upon the "law enforcement proviso" of the FTCA. (ECF No. 53 pp. 6-7.) The United States alternatively contended that Rule12(b)(6) barred Carnevale's FTCA claim because he had not plausibly alleged that ATF initiated his prosecution. It also argued that a claim based on lead fire investigator Special Agent William Petraitis' ("Petraitis") purportedly false testimony at trial was precluded "under well-established law." (*Id.* p. 18.)

The Court denied the United States' Fed. R. Civ. Pro. 12(b)(1) motion with respect to claims made against the ATF fire investigators, finding there were issues of fact which if taken as true, fell outside the protections afforded by the discretionary function exception.

At the same time, the Court granted the Rule 12(b)(1) motion with respect to the ATF chemists, finding that there was no basis to conclude that the ATF chemists identified in the Amended Complaint were acting as "investigative or law enforcement officers" as defined by the FTCA. The Court's review of a Declaration, its attached exhibits and the allegations of the Amended Complaint confirmed that there were no factual allegations that William Kinard ("Kinard"), a chemist for ATF, performed any independent investigative or law enforcement activities, nor was he alleged to have assisted Petraitis in the investigation.  Rather, his report included allegedly false information supplied by Agent Petraitis.  The only other allegations about the conduct of ATF employees stated a forensic laboratory chief and her supervisor identified falsifications in Kinard's report years later "in preparation for Mr. Carnevale's criminal trial" and either turned over these findings to prosecutors or intentionally failed to do so.  As stated in the Opinion, even if assumed to be true, the court found this conduct did not represent investigative or law enforcement activity.

The Court also granted the United States' Rule 12(b)(6) motion, finding in part that the portion of the FTCA claim that was based on Petraitis's purportedly false testimony failed as a matter of law. Federal law enforcement agents have absolute immunity from liability based upon their testimony, even if it is false.  *See Hughes v. Long*, 242 F.3d 121 125 (3d Cir. 2001) ("Witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony") (citing *Briscoe v. LaHue*, 460 U.S. 325, 341, 345-346 (1983)). Carnevale's

brief in opposition to the motion to dismiss did not contest the United States' position that Petraitis' allegedly false testimony cannot be relied upon support his FTCA claim.

The Court also found that the malicious prosecution claim against the United States should be dismissed because Carnevale did not plausibly allege that any employee of the United States initiated his prosecution. The opinion set forth the elements of a malicious prosecution claim under Pennsylvania law[1] and concluded that because the Amended Complaint did not allege that an employee of the United States was directly involved in the initiation of Carnevale's prosecution, there was no basis to reasonably conclude that the United States "initiated" a criminal proceeding against Carnevale or did so without probable cause. Thus, because all of the requisite elements of a malicious prosecution claim were not plausibly pleaded, the Rule 12(b)(6) motion on this issue was granted.

### III. Analysis of Motion for Reconsideration

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Lab. Inc v. Dentsply Intern. Inc.,* 602 F.3d 237, 252 (3d Cir. 2010). A motion for reconsideration is not an appropriate mechanism to relitigate issues the court has already decided, or to ask a district court to rethink a decision it already made. *Williams v. City of Pittsburgh*, 32 F. Supp .2d 236, 238 (W.D. Pa. 1998); *Reich v. Compton*, 834 F. Supp. 753, 755 (E.D. Pa. 1993), aff'd in part, rev'd in part, 57 F.3d 270 (3d Cir.

---

[1] The alleged conduct that gave rise to the claim occurred in Pennsylvania. Under Pennsylvania law, "a claim for malicious prosecution consists of these five elements:(1) the defendant initiated a criminal proceeding;(2) without probable cause; (3) maliciously or for a purpose other than bringing the plaintiff to justice; (4) causing the plaintiff to suffer a deprivation of liberty consistent with the concept of seizure; and (5) the outcome of the criminal proceeding favored the plaintiff." *Karkalas v. Marks,* 845 Fed. Appx. 114, 119 (3d Cir. 2021) (citing *Harvard v. Cesnalis,* 973 F.3d 190, 203 (3d Cir. 2020)). Malicious prosecution under § 1983 requires the same elements. *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003).

1995); *Keyes v. Nat'l R.R. Passenger Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. 1991). Similarly, it is not an opportunity to get a "second bite of the apple" or to advance arguments that a party could have made but chose not to. *Bell v. City of Phila.*, 275 F. Appx. 157, 160 (3d Cir. 2008); *Spence v. City of Phila.*, 147 Fed. Appx. 289, 291-92 (3d Cir. 2005); *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).

Carnevale makes three arguments in support of his Motion for Reconsideration.[2] He first argues that newly available evidence purportedly shows the ATF's direct influence and involvement in initiating criminal proceedings against him. Second, he contends that in order to prevent manifest injustice, the Court must "reconsider the factual allegations of the Amended Complaint in their totality" concerning the initiation of the criminal proceedings. Finally, he asserts that the Court committed an error of law about what must be alleged to state a malicious prosecution claim under the FTCA.

Carnevale alternatively seeks leave to amend his complaint to plead facts related to the newly acquired evidence.

The United States counters that Carnevale has not met his burden to show that he is entitled to reconsideration. After noting that there has been no intervening change in the law, it argues that

---

[2] In support of his motion, Carnevale cites to *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). This decision discusses the three-part test utilized to resolve motions for reconsideration filed under Fed. R. Civ. P. 59(e), which addresses motions to alter or amend a judgment. Under this test, the grounds to be considered are: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or prevent manifest injustice. Carnevale does not argue that there has been an intervening change in the law but does rely on the other two factors. While this Court's Order dismissing the United States from this action has not been reduced to judgment, courts in this district have utilized this test to resolve motions for reconsideration and therefore, it will be applied here. *See, e.g., Baldridge v. Geico Ins. Co.*, No. 2-18-cv-1407, 2020 WL 1557284 (W.D. Pa. April 1, 2020).

Carnevale has not identified any clear error of law. It further contends that the motion for reconsideration should be denied because Carnevale has not identified facts in the Amended Complaint that were not considered by the Court; rather, Carnevale merely points to the same facts that were referenced in his brief in opposition to the motion to dismiss. In addition, the United States notes that with respect to newly available evidence, Carnevale did not attach, explain, analyze or provide any information about the potential relevance of any purportedly new evidence and whether he had access to it before the date he claims to have discovered it.

The United States also opposes Carnevale's request for leave to amend his complaint, noting that as it relates to the ATF chemists, Carnevale does not explain how this evidence could overcome the Court's ruling regarding their dismissal. Further, it argues, Carnevale's failure to submit a draft proposed amended complaint is fatal to his request to amend.

Each of these issues will be addressed below.

    A. <u>New Evidence</u>

Carnevale claims that on August 9, 2023, Defendant DiGiovanni produced an ATF file[3] that includes information about the ATF's involvement in the 2006 investigation which led to his arrest. As a result, he argues, he now "has evidence to plead and prove the ATF's continued involvement in both the initial investigation, and the decision to charge Mr. Carnevale." (ECF No. 74 p. 4.)

"'New evidence,' for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously

---

[3] Carnevale references "Ex. A, DCARN005380" in his brief in support for the proposition that "[t]he ATF has even claimed that it never maintained a file." (ECF No. 74 p. 4.) Neither the motion nor the brief includes any exhibits.

available." *Howard Hess Dental Lab. Inc.,* 602 F.3d at 252.  Carnevale asserts that the "ATF has always claimed that it destroyed its file one year after the fire occurred." However, he states, a file was produced by Defendant DiGiovanni, but it is currently unknown when or how DiGiovanni acquired it or if the ATF's representations about the destruction of its copy of its file are inaccurate. Thus, without more information about the nature of the "new" evidence, it is impossible for the court to determine whether this evidence was unavailable before August 9, 2023.

In addition, Carnevale acknowledges that he obtained this evidence prior to the Court's ruling on the motion to dismiss, albeit just over a week before. At that point, he was on notice regarding the grounds for the United States' motion as well as the existence of ATF documents. If Carnevale viewed this information as significant to the outcome of the United States' motion, nothing prevented him from seeking relief from the Court immediately upon receiving the evidence.  He did not do so.

Strikingly absent from Carnevale's submission is any specific information about what new evidence he has or how it changes the outcome here. Without this information, an analysis of the potential impact of any newly acquired evidence on the claim against the United States is impossible.  Nor did Carnevale submit a proposed amended complaint that, presumably, would have included new factual allegations against the United States.[4]

No new factual information has been supplied about ATF's alleged involvement in the 2006 investigation or its potential role in the initiation of the prosecution.  Thus, there is no basis to reconsider the Court's decision based upon an assertion of newly acquired evidence.

---

[4]The impact of Carnevale's failure to do so will be discussed later in this opinion.

B.  Review of the Factual Allegations of the Amended Complaint in Their "Totality"

Carnevale's second argument is that the Court failed to review the allegations of the Amended Complaint "in their totality."

A review of the allegations of the Amended Complaint was conducted in connection with the Court's ruling on the motion to dismiss. In arguing that the totality of the allegations support reconsideration, Carnevale includes the following representations in his supporting brief:

- "Mr. Carnevale clearly alleges that the ATF was involved in his prosecution in 2007…The Amended Complaint also alleges that the ATF officers who assisted in Mr. Carnevale's prosecution knew that the information they were providing was false." (ECF No. 74 p. 7.)

- "The ATF assumed sole responsibility over the underlying investigation, so the City of Pittsburgh could not second-guess the ATF's conclusions and did not know that the arson claim was false." (*Id*. p. 9.)

- "By taking responsibility for the investigation, falsely telling the City of Pittsburgh and the district attorney that the fire was criminal, and then covering up evidence that its agents had lied, the ATF made independent discretion regarding the cause of the fire impossible. Simply put, if the fire had been ruled accidental in 1993, then Defendants Evans and Smith would not have investigated it as an alleged criminal homicide in 2007. If the ATF had disclosed the fact that…the test results were fabricated in 2007, the prosecutor could have exercised her discretion to withdraw the charges. The ATF's provision of false information prevented other members of the criminal justice system from exercising their discretion in deciding whether to prosecute Mr. Carnevale." (*Id*.)

- "Regardless of the passage of time, criminal proceedings are not initiated against Mr. Carnevale *unless* the ATF provides knowingly false statements to investigators that it did." (*Id.*) (emphasis in original).

- "The ATF handled the fire investigation, which was an integral part of the affidavit of probable cause and the decision to arrest Mr. Carnevale." (*Id.*)

- "Thus, the very fact that the ATF provided others with fabricated evidence of murder *knowing that someone would be arrested and charged*, is sufficient for Mr. Carnevale to plead malicious prosecution under Pennsylvania law." (*Id.* p. 11.) (emphasis added).

- "[M]r. Carnevale *clearly alleged that the ATF knew that Mr. Carnevale was being arrested, tried and sentenced to life in prison* based on its false allegations, and

8

instead of disclosing it, the ATF covered it up and alleged that the evidence was destroyed." (*Id.*) (emphasis added)

- "The Amended Complaint plausibly alleges that the ATF fabricated probable cause with respect to arson *and that fabrication caused the initiation of criminal proceedings against Mr. Carnevale for that crime.*" (*Id.* p. 12.) (emphasis added).

- "The ATF's false arson claim instigated the criminal homicide investigation and later criminal proceedings against Mr. Carnevale." (*Id.*)

The Court has again reviewed all of the allegations of the Amended Complaint in the light most favorable to Carnevale. The Court's "totality" review of the Amended Complaint reveals that in large measure, the statements (and arguments) made by Carnevale in his brief as support for his motion for reconsideration are not pleaded in the Amended Complaint. As stated by the Third Circuit in *Dongelewicz v. PNC Bank Nat'l Ass'n,* 104 F. Appx. 811, 819 n. 4 (3d Cir. 2004), "a contention in a brief 'clearly…may not be used to 'substitute for an allegation in a complaint'") (quoting *Williams v. New Castle Cnty.,* 970 F.2d 1260, 1266, n. 4 (1992).

A review of the Amended Complaint reveals the following allegations about the ATF investigation:

- ATF did not arrive until five days after the fire;

- Agent Petraitis intentionally falsified evidence, did not perform an "appropriate investigation," did not rule out an accidental cause of the fire, knew there was no evidence supporting his conclusion, falsely represented that the fire was intentionally set by the use of lacquer thinner as an accelerant, told Kinard, an ATF chemist, to falsify his report to state that lacquer thinner was present, ordered the excavation of the scene in a way to cause accelerants to be artificially introduced into the investigation of the fire, and concealed fire control and excavation efforts from "criminal investigators" so that "they never considered it in their respective investigations."

- The "lies" of ATF set a homicide investigation in motion.

- Carnevale was interviewed in 1993, passed a polygraph test "thereby ruling him out as a criminal suspect," and provided his clothing for testing, "again ruling him out a criminal suspect."

- No other agency revisited the cause of the fire.

- Absent Petraitis' knowingly false reports and Kinard's false reporting, there would have been no allegation of criminal wrongdoing, no criminal investigation, and no prosecution.

- The Sheriff of Allegheny County reopened the investigation into the fire in 2005 because it was "on his mind" and was "solvable." Neither of the assigned investigators chose to reinvestigate the cause of the fire or arson determination.

ECF No. 44 ¶¶ 29-35, 45-57, 75-79.[5]

While Carnevale critiques nearly every aspect of the ATF investigation, he fails to allege that the ATF's motive in fabricating evidence was to implicate Carnevale or any other person or for a purpose other than bringing an offender to justice. Indeed, as it relates to Carnevale, he alleges that he was ruled out as a suspect in 1993 and as such, was not arrested or charged with any crime. Thus, as acknowledged in the Amended Complaint, any alleged "lies" did not set a homicide investigation into motion 12 years later. (ECF No. 44 ¶1.) Rather, as the facts pleaded in the Amended Complaint state, the investigation was reopened solely because the Sheriff of Allegheny County decided to do so. And while Carnevale states that he was exonerated after his conviction, the Amended Complaint never alleges that the fire was ultimately found to be accidental.

Moreover, while Carnevale alleges that Defendants Evans and Smith included in their affidavit of probable cause that the cause of the fire was that "a person or persons unknown" used flammable liquid, Carnevale also alleges that these defendants failed to disclose in their affidavit a number of things, including that Carnevale had been ruled out as a suspect in 1993. And as the

---

[5] While the Amended Complaint inconsistently alleges that ATF chemists either turned over to the other Defendants their findings regarding the falsification of Kinard's findings as to lacquer thinner or failed to do so, these defendants are not "investigative or law enforcement officers" as defined by the FTCA. As the Court concluded in its ruling on the motion to dismiss, their conduct therefore cannot give rise to a FTCA claim.

10

Court previously noted, Carnevale pleads that: "Evans and Smith ultimately arrested Mr. Carnevale for crimes relating to the fire at the Columbia…*based solely on the information provided by Sandi and Shane Evans*." (ECF No. 44 ¶ 80.) (emphasis added).

Not a single paragraph of the Amended Complaint states that anyone from the ATF was involved in the "cold case" investigation, made any statements to the City of Pittsburgh, knew that anyone would be charged with crimes years later, submitted the affidavit of probable cause, decided what should be included, or not, in that affidavit, made any determination regarding the existence of probable cause, or initiated or was otherwise involved in Carnevale's prosecution. Despite any allegedly false reports by the ATF, Carnevale was, as he admits, ruled out as a suspect as a result of the ATF investigation. According to the specific facts pleaded by Carnevale, Defendants Evans and Smith were solely responsible for the investigation years later, exercised their discretion by choosing not to reinvestigate the cause of the fire or to re-evaluate the arson determination, disregarded the 1993 conclusion that ruled out Carnevale as a suspect and independently concluded that Carnevale committed the crimes for which he was charged based upon the evidence of two individuals.[6]

Viewing the totality of the allegations of the Amended Complaint, the Court again concludes that it pleads insufficient facts to support an FTCA claim against the United States.

C. Carnevale Has Failed to Establish an Error of Law

Even if the facts that are actually pleaded can be read as expansively as Carnevale suggests, the Court's decision was not erroneous as a matter of law.

---

[6] While Carnevale places great emphasis on the introduction to the Amended Complaint, its bald conclusion that a homicide investigation was set into motion by ATF's lies is not supported by the factual allegations that appear thereafter.

Carnevale contends that the Court erred in concluding that because he did not allege that any conduct on the part of the ATF was malicious or specifically directed toward him, his malicious prosecution claim failed to state a claim upon which relief may be granted. (*Id*. pp. 9-13.) He argues that Section 653, comment g, of the Restatement (Second) of Torts "does not require that the false information target a particular individual. It requires only that the information be provided with malice or for a purpose other than bringing a person to justice." (*Id*. p. 11.)

Comment g provides in part: "[I]n order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false."

Thus, Section 653, comment g, distinguishes situations in which a private person merely provides information to an official who, by exercising discretion, may initiate charges, and those in which a private individual either provides knowingly false statements to an official or directs or pressures an official to initiate charges. The latter situation makes the officer's intelligent use of discretion impossible and in the process, potentially subjects the person making the false statements to prosecution for malicious prosecution. *See generally* Restatement (Second) of Torts § 653, comment g.

As an initial matter, Carnevale does not allege that Petraitis or any other ATF agent is a "private person" as that term is used in the Restatement (Second) of Torts § 653, comment g, nor does he cite any authority for the proposition that a law enforcement agency or an employee of such agency is a "private person" for purposes of this section. The Court's independent review

failed to uncover a decision which held that an employee of a law enforcement agency is a "private person" for purposes of this section of the Restatement.

The Court's decision to grant the motion to dismiss was based upon the elements of a claim for malicious prosecution. Under Pennsylvania law, a malicious prosecution claim must allege, among other things, that a defendant initiated a criminal proceeding against the plaintiff without probable cause and with malice. *Karkalas v. Marks,* 845 Fed. Appx. 114, 119 (3d Cir. 2021)

Carnevale's claim fails as a matter of law because his factual allegations conclusively establish that the ATF did not initiate his criminal proceedings. Even if it could be assumed that agents of the ATF are "private persons" under § 653, the Amended Complaint does not allege that Petraitis or any other ATF employee had a desire to initiate criminal proceedings against Carnevale or anyone else) that was "expressed by direction, request or pressure." [7] Even assuming that the ATF intentionally falsified its findings in 1993, the allegations in the Amended Complaint expressly plead that Evans and Smith initiated the prosecution of Carnevale. There are no allegations that they consulted with anyone at ATF or were directed, requested or pressured by anyone from the ATF to prosecute anyone, let alone Carnevale. Indeed, as pleaded in the Amended Complaint, Defendants Evans and Smith reviewed the entire "cold case" "from scratch" and exercised their own discretion about how to conduct their investigation and who to charge. They then initiated criminal proceedings against Carnevale after conducting their own independent investigation.

Similarly, the Amended Complaint does not allege that Evans and Smith relied on the ATF's allegedly false conclusion of arson to charge Carnevale. According to Carnevale's version

---

[7] Indeed, Carnevale pleads that Carnevale was ruled out as a suspect during the 1993 investigation.

of the facts, Defendants Evans and Smith made the decision to arrest him *solely* based on the statements of two witnesses, and he does not allege that anyone from the ATF decided or was consulted about what information to include or exclude from the affidavit of probable cause. Indeed, according to Carnevale, while the affidavit of Evans and Smith does cite the AFT's conclusion that the fire was incendiary and not accidental, the affidavit also relies upon the evidence from the two witnesses identified by Evans and Smith. According to Carnevale, the affidavit also omits at least fifteen facts from the affidavit. This included that in 1993, when the ATF concluded its investigation, no physical evidence linked Carnevale to the fire, he passed a polygraph test, his clothing tested negative for an accelerant, he had an alibi and the "ATF had a reliable informant with information on the fire…being conducted by a contract arsonist (i.e., not Mr. Carnevale)." (ECF No. 44, ¶ 84(b-d), (k) and (o).

The factual allegations of the Amended Complaint state that Evans and Smith, not the ATF, initiated criminal proceedings against Carnevale based upon their own investigation. Simply put, Carnevale has not pleaded any facts that could support a claim that agents of the ATF either directly instituted proceedings against him or can be charged with the responsibility for doing so. As such, he has failed to state a malicious prosecution claim against the United States.

Therefore, Carnevale's motion for reconsideration will be denied.

D. Leave to Amend the Complaint Will Be Denied

Carnevale's motion for reconsideration alternatively seeks leave to amend his complaint but fails to attach a proposed second amended complaint to his motion.

The Third Circuit has held that a motion for leave to amend should be denied when the party seeking to amend has not attached a proposed amended complaint to the motion. *McWreath v. Range Resources-Appalachia, LLC,* 645 Fed. Appx. 190, 196 (3d Cir. 2016); *Fletcher Harlee*

14

*Corp. v. Pote Concrete Contractors,* 482 F.3d 247, 252 (3d Cir. 2007) ("to request leave to amend a complaint, Plaintiff must submit a draft amended complaint to the court…."); *U.S. ex rel. Zizic v. Q2Adminstrators, LLC,* 728 F.3d 228, 243 (3d. Cir. 2013) (a failure to attach a draft amended complaint is "a failure that is fatal to a request for leave to amend.").

At any rate, allowing an amendment to the Amended Complaint would be futile in light of the conclusive nature of the allegations of the Amended Complaint concerning the initiation of proceedings against Carnevale. *See* ECF No. 71 p. 19. Thus, Carnevale's request for leave to file a second amended complaint will be denied.

Therefore, this 6th day of October, 2023, it is ORDERED that Carnevale's motion for reconsideration and alternative motion for leave to amend the Amended Complaint are DENIED.

BY THE COURT:

/s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge