IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL CARNEVALE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2:22-cv-341 |
| ) | |
| v. ) | Magistrate Judge Patricia L. Dodge |
| ) | |
| JENNIFER DIGIOVANNI, SCOTT ) | |
| EVANS, and J.R. SMITH, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Scott Evans ("Evans") and J.R. Smith ("Smith") have filed a Motion in Limine to Preclude Expert Testimony and/or Report of Joe D. Kennedy (ECF No. 106). In their motion and supporting Brief (ECF No. 107), Defendants contend that Mr. Kennedy, who has submitted an expert report on behalf of Plaintiff Daniel Carnevale ("Carnevale"), should be precluded from offering any expert testimony at trial. Carnevale has submitted a Brief in which he opposes the motion (ECF No. 115).

I. **Relevant Background**

Carnevale asserts claims against Defendants Evans and Smith, as well as Defendant Jennifer DiGiovanni ("DiGiovanni"), arising from his arrest and conviction for, among other things, murder and arson. His sentence was later vacated and he was granted a new trial, after which the charges against him were *nolle prossed.*

Thereafter, Carnevale commenced this lawsuit in which he asserted various constitutional claims against Defendants. As relevant to the pending motion, and as detailed in the Complaint, Carnevale raises civil rights claims against Defendants Evans and Smith that include malicious

prosecution in violation of the Fourth Amendment, a Fourteenth Amendment claim of fabrication of evidence and civil conspiracy.

A. Relevant Allegations in Complaint

According to the Complaint, in 2005, Detectives Evans and Smith were assigned to investigate a fire that occurred at the Columbia Apartments in Pittsburgh in 1993, resulting in the death of three individuals. (ECF No. 1 ¶ 51.) Carnevale contends that after an inadequate investigation, Evans and Smith included materially false information and omitted other material information in the affidavit of probable cause that was the basis for Carnevale's arrest on charges that included arson and murder. (*Id.* at 11-13.) While all of Carnevale's allegations will not be detailed for purposes of this opinion, he alleges that Evans and Smith omitted the fact that Shane Evans, a witness to the fire, told investigators in 1993 that he had not seen the face of the person he saw leaving the courtyard of the Columbia Apartments. By contrast, the affidavit submitted by Evans and Smith in 2006 states that an unnamed witness (later identified as Shane Evans) stated that he saw Carnevale walk out of the side/courtyard door of the Columbia Apartments approximately thirty minutes before fire and police officers arrived at the fire scene. In addition, Carnevale asserts, they omitted from the affidavit that there was no physical evidence linking Carnevale to the fire, that Shane Evans knew Carnevale well at the time of the fire, and that another person had been identified as "suspicious" on the night of the fire. (*Id.* ¶¶ 80-82.)

B. Affidavit of Probable Cause

Evans and Smith's investigation culminated in the submission of Probable Cause/Criminal Complaint Affidavit ("Affidavit") on July 26, 2006. *See* ECF Nos. 109-3; 121-2. The July 2006 Affidavit served as the basis for the charges against Carnevale. (ECF No. 121-2.) The Affidavit states that it is based on "personal observation" and "information received" on January 17, 1993,

January 28, 1993 and January 27, 2006.[1] The affiants represent that the information is believed to be reliable because the source (for instance, an eyewitness) is "presumed reliable" and because the affiants and/or other police officers "corroborated details of the information." (*Id.*) The Affidavit includes references to Carnevale regarding events in 1993. In December 1992 (before the January 1993 fire), a book of checks that included the address of the fire location was found by someone with whom Carnevale had been staying. Additionally, Carnevale had possession of some Christmas decorations in a box that included the same address. Further, on the morning of the fire, Carnevale told the individuals with whom he was staying that he had seen the fire. He was interviewed by detectives in March 1993 and admitted stealing checks but denied starting the fire and agreed to take a polygraph examination. He also told officers that he was in a sandwich shop when he heard sirens and went to watch the fire. According to the Affidavit, Carnevale then "fled" to California before taking a polygraph examination. He later telephoned a police officer to tell him that he had received a three-year sentence for auto theft in California and asked when he would be extradited.

With respect to the investigation by Defendants Evans and Smith, the Affidavit states that they interviewed an unidentified witness who stated that on the morning of the fire, he saw Carnevale exit the Columbia Apartments and walk quickly away. The witness returned home and shortly thereafter saw a fire in the same building. The witness saw Carnevale watching the fire, and when he walked over him, Carnevale immediately stated that he was "at the sandwich shop."

The Affidavit does not reference any other information obtained by Evans and Smith in 2006.

---

[1] According to the Affidavit, Shane Evans was interviewed on January 27, 2006. (ECF No. 121-2.)

C. <u>Expert Report of Joe D. Kennedy</u>[2]

Carnevale submitted an expert report authored by Joe D. Kennedy ("Kennedy"), who is the Vice President of BlueLine Training Group, LLC. Kennedy states that he was asked to provide expert opinions regarding "the adequacies of the cold case investigative process completed by PBP and subsequent arrest of the plaintiff, Daniel Carnevale." (ECF No. 106-1 at 1.) By way of a brief summary of the 39-page report, Kennedy opines that the cold case investigation conducted by Evans and Smith was not objective. He critiques the fact that there were no efforts to confirm or refute the recollection of witness Shane Evans, who had not identified Carnevale on the day of the fire, and notes that there was no physical evidence, independent witnesses or a confession to support the events that occurred thirteen years before. Kennedy concludes that Defendant detectives did not follow investigative leads and instead conducted a "suspect based investigation" to try to make their theories fit the crime.

## II. **Legal Standard**

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) that testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[2] The brief summary that follows is not intended to provide a detailed recitation of Kennedy's report.

>(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one . . . [directed at] the scientific validity—and thus the evidentiary relevance and reliability—of . . . the proposed submission." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594-95 (1993). The Third Circuit has explained that under *Daubert*, "district courts perform a gatekeeping function to ensure that expert testimony meets the requirements of Federal Rule of Evidence 702." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017).

"As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591).

"[T]he evidentiary requirement of reliability is lower than the merits standard of correctness." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) To be reliable, an expert's testimony must be "based on the methods and procedures of science, not on subjective belief and unsupported speculation." *UGI Sunbury*, 949 F.3d at 833-34 (quoting *Karlo*, 849 F.3d at 80-81). An expert's testimony need not have "the best foundation" or be "supported by the best methodology or unassailable research." *Id.* at 834 (quoting *Karlo*, 849 F.3d at 81). Instead, admissibility of an expert's opinions turns on "whether the expert's testimony is supported by good grounds." *Id*. (quoting *Karlo*, 849 F.3d at 81); *see In re Paoli R.R. Yard PCB Lit.*, 35 F.3d 717, 746 (3d Cir. 1994) ("[T]he issue is whether the evidence should be excluded because the flaw is

5

large enough that the expert lacks good grounds for his or her conclusions."). In undertaking this inquiry, "[e]ach aspect of the expert's opinion 'must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules.'" *Karlo*, 849 F.3d at 81 (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012)).

The "fit" requirement "goes primarily to relevance." *Id.* (quoting *Daubert*, 509 U.S. at 591). While "higher than bare relevance," the standard for assessing the "fit" of an expert's testimony "is not that high." *In re Paoli*, 35 F.3d at 745. "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *UGI Sunbury*, 949 F.3d at 835 (quoting *Daubert*, 509 U.S. at 591). Thus, the inquiry in assessing "fit" is "whether an expert's testimony . . . 'will help the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting Fed. R. Evid. 702(a)).

### III. Discussion

Evans and Smith assert that Kennedy's opinions lack a "reliable, methodological foundation and go far beyond the parameters of permissible expert testimony" under Rule 702. (ECF No. 107 at 4.) They assert three reasons why his report and opinions should be excluded: (1) his opinions will not be helpful to the jury; (2) his opinions are not the product or application of reliable principles and methods; and (3) some of his opinions are outside the areas of this expertise.

### A. Are Kennedy's Opinions Helpful to the Jury?

Evans and Smith contend that the opinions expressed in Kennedy's report, the substance of which consists of opinions about what they could have done better in their investigation, and their failure to demonstrate more "investigative prowess," do not relate to any issue in this case. Thus, they contend, his opinions do not "fit" the facts of this case. Rather, the issues in dispute are whether there was probable cause for Carnevale's prosecution, and whether Evans and Smith

fabricated evidence. Further, they contend, much of Kennedy's opinions are based on speculation about what evidence may have been uncovered had they engaged in certain activities. As a result, his opinions would not assist the jury to understand the evidence or determine the facts at issue.

In turn, Carnevale argues that Kennedy's opinions would be helpful to the jury because they relate to police standards in cold case investigations, a unique subset not understood by a lay person. Kennedy discusses the methodologies employed in cold case investigations and how they are used to develop probable cause. He then opines that because the necessary steps were not taken, it led to the unnecessary and unsubstantiated arrest of Carnevale. According to Carnevale, Kennedy's opinions about what should have been done as part of the investigation assist the jury in understanding the totality of the circumstances Evans and Smith were required to consider and therefore are relevant to the claims asserted in this case. Carnevale also contends that this goes to the issue of whether Evans and Smith acted with a reckless disregard for his rights.

Mr. Kennedy's expert report discusses both the pre-arrest investigation by Evans and Smith and their failure to pursue investigative leads after interviewing Sean Burns. Thus, it appears that his opinions are principally directed to Carnevale's claim of malicious prosecution.[3] A Fourth Amendment claim of malicious prosecution must include the following elements: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014). It is well-settled that if law

---

[3] As Defendants note, Mr. Kennedy's criticisms of their investigation do not appear to be directly related to Carnevale's claim of fabrication of evidence.

enforcement officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution. *Id.* at 297. Generally, probable cause is an issue for the jury. *Id.* at 300.

Defendants' contention that the substance of Kennedy's opinions simply suggests that their investigation could have been better misses the mark. Among other things, Kennedy opines that they did not objectively investigate the fire, including any steps taken to confirm or refute the recollection of Shane Evans. While Defendants assert that identification by a witness, without more, is usually sufficient to establish probable cause, they acknowledge that it may not be sufficient if there is independent evidence of the witness's unreliability.[4] Here, the detectives either knew (or should have known, since they had access to and reviewed the 1993 investigative file) that the statements Shane Evans made to other investigators just after the fire in 1993 were at odds with what he told the detectives thirteen years later. Simply put, Shane Evans did not identify Carnevale, who he knew and spoke to at the fire scene, when interviewed on the day of the fire in 1993. Kennedy critiques the detectives' failure to explore these inconsistencies or to engage in other cold case investigation techniques before concluding that Carnevale started the fire. Thus, Kennedy's opinions related to the inadequacy of the investigation do sufficiently fit the facts of this case. It will help the jury to understand appropriate cold case investigation techniques in order to assess if the initiation of criminal proceedings by Evans and Smith was supported by probable cause. "Failure to investigate is considered in tandem with the strength or weakness of the probable cause evidence." *Eckman v. Lancaster Cty.*, 742 F. Supp. 2d 638, 653 (E.D. Pa. 2010), aff'd, 515 Fed. Appx. 93 (3d Cir. 2013).

---

[4] The Affidavit of Probable Cause states that the affiant believes the source of the information because the source is "presumed reliable" and the "affiant and/or other police officers corroborated details of the information." (ECF No. 121-2.)

8

Thus, the Court concludes that Kennedy's opinions regarding the methods and appropriate approach to cold case investigations could be helpful to the jury. At the same time, it agrees with Defendants that any opinions Kennedy renders that are speculative will be excluded at trial. This includes speculation about what evidence Evans and Smith *may have* found had they conducted additional investigation. To be clear, however, if the detectives failed to investigate evidence that *did* exist, Mr. Kennedy may testify about the significance, if any, to his opinions.

B. <u>Methodology</u>

Evans and Smith next contend that Kennedy's opinions must be excluded because he has failed to show that they are based on reliable methodology. They note that Kennedy does not identify any national standards or provide the source of the investigative steps he claims that investigators must follow. Thus, Evans and Smith argue, his opinions lack good grounds.

Carnevale disagrees, noting that Kennedy has more than 28 years of law enforcement experience and has specialized in cold case homicide investigations. According to Carnevale, Kennedy has written the protocols and methodologies used by various law enforcement associations and his methodologies are now taught to law enforcement agencies throughout the United States.

Notably, Evans and Smith do not challenge Kennedy's qualifications to render opinions in this case. Nor could they reasonably do so, as his expert report sufficiently provides his education, background and experience in law enforcement, including criminal investigations, to render opinions about cold case investigations. With that background, Kennedy describes at length the methodology that should be used in a criminal investigation (ECF No. 106-1 at 6-7) and then goes on to explain cold case methodology, investigative techniques and protocols (*Id.* at 8-10). As noted, Kennedy states that he wrote the methodology and protocol for the Naval Criminal

9

Investigative Service ("NCIS") cold case investigations and his methodology has been adopted by other police agencies. He also asserts that the National Sheriff's Association ("NSA") has endorsed his cold case methodology and protocol as a "best practice" when working on previously unsolved homicides. Thus, according to Kennedy, the methodology applied in rendering his opinions is one developed by him that has since been endorsed by other law enforcement agencies.

As Defendants note, Kennedy states that comparing policies, procedures and methods that existed in 1993 or in 2005-2007 with today's standards would be like comparing apples to oranges. He does not, however, specifically identify what national standards existed in 1993 or in 2005-2007 (or in the present day for that matter). As a result, Defendants argue, since Kennedy does not specify the source of the investigative steps discussed in his report, he has not shown that these steps are reliable.

The Court agrees that since Kennedy does not identify any national standards that existed in 1993 or 2005-2007, he may not rely on such standards in rendering his opinions. At the same time, as discussed above, Kennedy's report discusses at length the methodology he employed as well as his development of this methodology and its use by certain law enforcement organizations. Thus, he has sufficiently stated good grounds for his opinions independent of any relevant "national standards" that might exist.

Thus, while Evans and Smith may cross-examine Kennedy about the methodology he has employed in this case, they have not demonstrated that his testimony lacks good grounds.

C. <u>Opinions Outside of Kennedy's Expertise</u>

Evans and Smith assert that Kennedy has expressed opinions that fall outside his area of expertise. Specifically, they contend that Kennedy expresses opinions about the credibility of

10

witnesses and the training and supervision by the PBP. Carnevale does not directly respond to these arguments.

The assessment of the credibility of witnesses is not proper expert testimony. Therefore, Kennedy will be barred from expressing any opinions or other testimony about the credibility of any witness, including Shane Evans or Sean Burns. At the same time, Kennedy may testify to appropriate cold case investigative techniques to employ when assessing evidence from witnesses, including assessing evidence that may be inconsistent.

At trial, Evans and Smith may object to any evidence which Carnevale attempts to offer from Kennedy in which he would be asked to offer an opinion about witness credibility.

The Court also agrees that Kennedy is precluded from offering any expert testimony about the PBP's training or supervision of Evans and Smith, or in general. This is not an issue raised by Carnevale in this case and therefore is irrelevant to his claims.

Therefore, this 30th day of September, 2025, it is ORDERED that Defendants' motion is GRANTED IN PART. Plaintiff is precluded from offering any testimony or opinions from Joe D. Kennedy about the credibility of witnesses or PBP's training or supervision. Defendants' motion is otherwise DENIED.

BY THE COURT:

/s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE