IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL CARNEVALE, | ) |
| Plaintiff, | ) Civil Action No. 2:22-cv-341 |
| v. | ) Magistrate Judge Patricia L. Dodge |
| JENNIFER DIGIOVANNI, SCOTT EVANS, and J.R. SMITH, | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

Plaintiff Daniel Carnevale ("Carnevale") brings this civil action against Jennifer DiGiovanni ("DiGiovanni"), Scott Evans ("Det. Evans"), and J.R. Smith ("Det. Smith") (collectively "Defendants"). Pending before the Court are a motion filed by DiGiovanni (ECF No. 165) and one filed by Dets. Evans and Smith (ECF No. 169). Both seek reconsideration of the Court's orders granting in part and denying in part Defendants' respective motions for summary judgment. For the following reasons, both motions for reconsideration will be denied.

**I. Relevant Procedural History**

The Court's Memorandum Opinion issued on September 30, 2025 addressed both motions for summary judgment. (ECF No. 155.) Defendants' motions were granted to the extent they sought dismissal of Carnevale's § 1983 civil conspiracy claim in Count III. The motions were otherwise denied. (ECF Nos. 156, 157.)

The Court scheduled a telephone status conference with the parties to discuss pre-trial deadlines. (ECF No. 161.) On October 3, 2025, Dets. Scott and Evans moved to continue the status conference due to a scheduling conflict. (ECF No. 162.) The Court granted the motion and the conference was rescheduled based on the availability of the parties. (ECF No. 163.)

On October 7, 2025, DiGiovanni moved for reconsideration of the Court's summary judgment order. (ECF No. 165.) The same day, Dets. Evans and Smith filed a motion to extend the deadline to file a motion to reconsider. (ECF No. 164.) The Court granted their request (ECF No. 167), and their motion was filed the following day (ECF No. 165.) The motions have been fully briefed (ECF Nos. 166, 170, 175) and are ready for disposition.

## II. Legal Standard

To preserve the court's interest in finality, motions for reconsideration of both final and interlocutory orders should be granted sparingly. *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998). A motion for reconsideration is not a chance for the movant to get a "second bite of the apple." *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. Oct. 4, 2016). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (citation modified) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). It is not an opportunity for the parties to relitigate issues that the court previously resolved or to present arguments or evidence that the movant could have offered prior to the issuance of the order for which reconsideration is sought. *Qazizadeh*, 214 F. Supp. 3d at 295-296.

Motions for reconsideration of final orders or judgments are governed by Rule 59(e) and Rule 60(b). To succeed, the party seeking reconsideration must show at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). *See also Max's Seafood Café*, 176 F.3d at 677.

Conversely, a motion for reconsideration of an interlocutory order is governed by Rule 54(b). *See Qazizadeh*, 214 F. Supp. 3d at 295 ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)."). Here, the movant must establish good cause for why the court should revisit its prior decision. *Id.* Although the three grounds justifying reconsideration under Rule 59(e) "are not binding in an analysis of Rule 54(b) motions, courts frequently look to these standards for guidance in considering such motions." *Wells v. Houston*, 2024 WL 4591445, at *2 (W.D. Pa. Oct. 28, 2024) (quoting *Nyamekye v. Mitsubishi Elec. Power Prods. Inc.*, 2018 WL 3933504, at *2 (W.D. Pa. Aug. 16, 2018)).

### III. Discussion

#### A. DiGiovanni's motion

DiGiovanni seeks reconsideration of the denial of her summary judgment motion as to Carnevale's fabrication claim. Her motion argues that reconsideration is necessary to correct an "error" that will lead to manifest injustice. She asserts that the Court conflates two allegations: (1) providing evidence to Burns; and (2) soliciting false testimony from Burns. (ECF No. 166 at 3.)

DiGiovanni does not offer any new evidence[1] or case law to support her position. She instead attempts to rely on the same facts and advance the same arguments previously rejected by the Court in making its initial summary judgment ruling. This is an improper basis for

---

[1] The Court notes that throughout her brief, DiGiovanni states that Burns reported Carnevale's December 27, 2006 confession to his own attorney, David O'Barra, who then reported the confession to a Public Defender's Office private investigator in February 2007. *See* ECF No. 166 at 3, 4, 5, 6. As support, DiGiovanni cites the transcript of Burns' March 1, 2007 interview and Dets. Evans and Smith's report summarizing the interview. Neither document states when, how, or to whom Burns first reported Carnevale's alleged confession. There is also no mention of how DiGiovanni and the Dets. learned that Burns had information relating to Carnevale's criminal case.

3

reconsideration. Therefore, because DiGiovanni has failed to establish good cause for the Court to reconsider its prior summary judgment decision, her motion will be denied.

### B. Motion of Dets. Evans and Smith

Dets. Evans and Smith seek reconsideration to correct what they characterize as an error of law by denying the defense of qualified immunity. They argue primarily that Dets. Evans and Smith are entitled to qualified immunity because (1) the rights at issue were not, as a matter of law, clearly established at the time of the alleged conduct (Count II) and (2) because Carnevale failed to state a Fourth Amendment malicious prosecution claim (Count I).

1. Fourteenth Amendment fabrication claim

Dets. Evans and Smith first argue that they are entitled to qualified immunity as to Carnevale's fabrication of evidence claim because the right was not clearly established in 2006 when the Affidavit of Probable Cause was submitted or in 2007 when they began talking to Sean Burns.[2] They contend that the Fourteenth Amendment right to be free of an act constituting an alleged fabrication was not recognized until 2014 when the Third Circuit decided *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014). They therefore seek reconsideration based on the Court's improper reliance on cases that were determined after Carnevale's rights were allegedly violated in 2006 or 2007.

But as Carnevale correctly points out, in *Halsey*, the Third Circuit held that the defendant's right to be free from the use of fabricated evidence had been clearly established in 1985:

---

[2] Dets. Evans and Smith's summary judgment brief contains a section with the heading "The Detectives are entitled to summary judgment on all of Mr. Carnevale's claims and, at a minimum, are entitled to qualified immunity." (ECF No. 110 at 17.) Although they do indeed set forth basic case law underlying qualified immunity, they fail to refer to any specific cases with facts analogous to this case. Instead, they argue that Carnevale failed to sufficiently define the contours of the right at issue, concluding that "Due to the lack of specificity of Mr. Carnevale's claims, the Court can determine that the Detectives are entitled to summary judgment because Mr. Carnevale has failed to establish any alleged constitutional injury." (*Id.* at 19.)

4

> The obviousness of this violation would be difficult to escape even without the closely analogous Supreme Court precedent discussed above. By the time appellees allegedly fabricated Halsey's confession, more than two decades had passed since the Supreme Court had held that the due process clause required that the prosecution reveal exculpatory evidence to a criminal defendant. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Reasonable officers should have known that if they could not withhold exculpatory evidence from a defendant, they certainly could not fabricate inculpatory evidence against a suspect or defendant.

*Halsey*, 750 F.3d at 296.

More recently in *Dennis v. City of Philadelphia*, the Third Circuit again addressed whether the Fourteenth Amendment right against the use of fabricated evidence had been clearly established for the purposes of qualified immunity. 19 F.4th 279, 288-92 (3d Cir. 2021). Relying on *Halsey*, the Third Circuit affirmed the district court's denial of qualified immunity, finding that the right had been clearly established when the alleged violation occurred in 1992. *Id.* at 289 ("*Halsey* did so, recognizing prior precedent that held the fabrication of evidence by law enforcement officers violates the Fourteenth Amendment and that such a right had been established since at least 1985.").

Thus, Carnevale's Fourteenth Amendment right that officers refrain from using fabricated evidence against him was clearly established in both 2006 and 2007 when the alleged misconduct occurred. Dets. Evans and Smith have therefore failed to establish good cause for the Court to reconsider its denial of qualified immunity as to Count II.

2. <u>Fourth Amendment malicious prosecution claim</u>

Dets. Evans and Smith also ask the Court to reconsider denying qualified immunity as to Carnevale's Fourth Amendment malicious prosecution claim. They argue Carnevale failed to state a violation of his rights because the Fourth Amendment does not apply to post-conviction incarceration. But as Dets. Evans and Smith are undoubtedly aware, Carnevale's malicious

5

prosecution claim has always been based on the Affidavit of Probable Cause ("the Affidavit"), not his post-conviction incarceration. This argument is therefore unavailing.

Next, Dets. Evans and Smith argue that the Court had a duty to dissect the potentially tainted affidavit of probable cause and submit their own dissected version of the Affidavit. They contend that their dissected version "clearly demonstrates that with the 'tainted' portions removed, there remains probable cause and there were not 'material' omissions demonstrating malice such that the Motion for Summary Judgment [s]hould have been denied." (ECF No. 170 at 8.)

"When, as here, a judge issues an arrest warrant, we defer to it unless the officer misrepresented material information to get the warrant." *Evans v. Newark City*, 152 F.4th 537, 545 (3d Cir. 2025) (quoting *Pinkney v. Meadville, Pa.*, 95 F.4th 743, 748 (3d Cir. 2024)). Once the court determines that a material misrepresentation has occurred, it "must determine if a reasonable jury could find that omission was (1) made 'knowingly and deliberately, or with a reckless disregard for the truth' and (2) 'material, or necessary, to the finding of probable cause.'" *Id.* (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).

Dets. Evans and Smith's dissected version of the Affidavit omits all information from Shane Evans' 2006 statements relating to witnessing Carnevale exit the side door of the Columbia Apartments on the morning of the fire. The dissected version of the Affidavit contains the following facts that Dets. Evans and Smith argue are material:

- On March 2, 1993, Carnevale's former roommates told police that they found a check book labeled 220 Taylor Street under Carnevale's bed in December 1992.[3] They also said Carnevale gave them a box of Christmas decorations marked 220 Taylor Street. On the morning of the fire, the roommates said Carnevale came home around 7:30 a.m. and said that the fire was the worst thing that he had ever seen. He was wearing a green army field jacket at that time;

---

[3] As a reminder, the Court notes that the Columbia Apartments fire occurred on January 17, 1993.

- Detectives interviewed Carnevale on March 2, 1993. He admitted to stealing checks and other items from tenants' mailboxes outside 220 Taylor Street for several months before the fire. He denied starting the fire or ever setting foot inside the Columbia Apartments. On the morning of the fire, he said he had been at a nearby snack shop, heard the sirens and went to watch the fire. He said he had been wearing a green army field jacket;

- On January 27, 2006, Dets. Evans and Smith interviewed a witness who had seen the 2006 cold case article in the newspaper. The morning of the fire, the witness had heard sirens and went outside where a crowd had gathered to watch the fire. The witness approached Carnevale, who said, "I WAS AT THE SANDWICH SHOP."

(ECF Nos. 169-1 at 6; 170 at 7-8.)

Based on these facts alone, Dets. Evans and Smith insist there was probable cause to arrest Carnevale. However, even accepting Dets. Evans and Smith's reconstructed Affidavit as submitted, the facts and circumstances it sets forth would not "suffice in themselves to warrant a reasonable person to believe" that Carnevale had committed arson and murder. *Pinkney v. Meadville, Pa.*, 95 F.4th 743, 749 (3d Cir. 2024) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). Indeed, the fact that Carnevale had previously stolen materials from the building a month before and was on the scene watching the fire, as was an entire crowd, fails to establish probable cause that he set the fire.

Moreover, the reconstructed Affidavit fails to include any information about Shane Evans' contemporaneous statements given to police immediately after the fire, including his failure to identify Carnevale as a potential suspect despite his familiarity with him. Such information is certainly material to the determination of probable cause and therefore should have been included.

Dets. Evans and Smith have therefore failed to demonstrate good cause for the Court to reconsider its decision with respect to Count I.

## IV.     Conclusion

For these reasons, it is hereby ORDERED that the motions for reconsideration filed by Defendant Jennifer DiGiovanni (ECF No. 165) and Defendants Scott Evans and J.R. Smith (ECF No. 169) are DENIED.

February 9, 2026                                              BY THE COURT:


/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge